UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                    :

IN RE COLLEEN STRAWBRIDGE,                  :

                             Debtor.                :
------------------------------------------------------------------------:
                           :         11 Civ. 6759 (PAE)

COLLEEN STRAWBRIDGE,            :
                           :         OPINION & ORDER
                    Appellant,       :
              -v-                       :

GREGORY MESSER, *as Chapter 7 Trustee*, ANGELINA :
KHANAMIRIAN, and 200 E. 74 OWNERS CORP.,   :

                    Appellees.       :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

      Appellant and debtor Colleen Strawbridge ("Strawbridge") appeals *pro se* from a July 15, 2011 Order of the United States Bankruptcy Court for the Southern District of New York (Glenn, J.) (the "Order") approving a stipulation by and among appellees Gregory Messer, the trustee of Strawbridge's Chapter 7 estate (the "Trustee"), Angelina Khanamirian ("Khanamirian"), and 200 E. 74 Owners Corporation ("East 74"). That stipulation provides for the transfer of ownership of Strawbridge's apartment to Khanamirian subject to East 74's claim against the apartment. In exchange, the estate receives a release of Khanamirian's claim against it and funds sufficient to satisfy Strawbridge's unsecured creditors. For the following reasons, the Order is affirmed and Strawbridge's appeal is denied.

**I.     Background**[1]

This appeal arises out of a nearly decade-long dispute between the appellant and her creditors. The genesis of this dispute is a loan, in the amount of $200,000 (the "loan"), which Strawbridge took in October 2000 from a company called Fairmont Funding. *See* JA-U; JA-V. That loan was secured by the shares Strawbridge owned in East 74, the corporation which owns the co-op apartment in which she lives, and a lease she held as a result of that share ownership. *See* JA-U; JA-V. Because those shares and the lease relate to the apartment Strawbridge lives in, the loan was, in essence, secured by Strawbridge's home.

The appellant quickly fell behind on the loan payments and, thereafter, also stopped making monthly maintenance payments to her co-op, appellee East 74. Shortly after the loan was made, the originator, Fairmont, assigned the loan to Indymac Bank. On November 13, 2002, immediately before Indymac was to foreclose on the collateral (and, therefore, the apartment), Strawbridge filed her first petition for relief under Chapter 13 of the Bankruptcy Code. JA-A at 2. That case was dismissed by the Bankruptcy Court based on Strawbridge's failure to make payments pursuant to the plan imposed by the Court or provide documents necessary to the administration of the proceeding. *Id.* at 3. Thereafter, Strawbridge sued Indymac in New York state court, alleging that her debt was the result of a predatory lending scheme; that case was dismissed in 2006 after the court determined that the lending practices surrounding the loan were not predatory. *Id.*

---

[1]     The Court's account of the underlying facts of this case is drawn from the documents included in the parties' Joint Appendix filed as the record upon which this appeal is to be resolved. *See* Dkt. 13. The appellant designated 37 documents for the Joint Appendix, referred to numerically. For example, a reference to page five of document 17 appears as "JA-17 at 5." The appellees designated 25 documents for the Joint Appendix, organized alphabetically. For example, a reference to page five of document C appears as "JA-C at 5."

Indymac then sought to foreclose a second time. On December 19, 2006, Strawbridge filed her second bankruptcy petition, this time under Chapter 11 of the Bankruptcy Code. *Id.* After limited motion practice and an appeal to the District Court, that petition was also dismissed by the Bankruptcy Court for, *inter alia*, the debtor's failure to file monthly operating reports or to offer a plan of reorganization. *Id.* at 5.

After additional litigation in New York state court not relevant to this appeal, Strawbridge filed the instant petition pursuant to Chapter 11 of the Bankruptcy Code on December 8, 2009. *Id.* at 2. On February 9, 2010, East 74 moved for an order dismissing Strawbridge's petition or, in the alternative, converting it to a liquidation proceeding pursuant to Chapter 7 of the Bankruptcy Code and appointing a trustee to administer the liquidation of the debtor's assets. *Id.* at 2. On March 5, 2010, the Bankruptcy Court granted East 74's motion to convert the petition to Chapter 7. *Id.* at 10. In arriving at this conclusion, the Bankruptcy Court stated that "Strawbridge did not file her petition in good faith," and that the 2009 petition was "part of a strategic effort to frustrate the secured creditors' efforts to enforce their interests in the Apartment." *Id.* at 8. Because of this pattern of behavior, the Bankruptcy Court determined that "it is highly likely that she will merely file a new bankruptcy petition if this case is dismissed," and that "[w]here serial filings are an issue, conversion [to a Chapter 7 proceeding] is in the best interests of the creditors." *Id.*

While Strawbridge litigated these various matters, the loan secured by her co-op shares and lease changed hands a number of times and continued to collect interest and default fees. In July 2008 Indymac Bank, who had been assigned the loan from the originator, Fairmont Funding, was put into conservatorship by the Federal Deposit Insurance Corporation ("FDIC"). On May 20, 2009, in its capacity as conservator, the FDIC assigned Strawbridge's loan to a

company named Kondaur Capital Corporation ("Kondaur").  In October 2009, Kondaur, in turn, assigned the loan to a company called ESA Ventures, LLC ("ESA").  *See* JA-T 23:15–25:1.  On December 18, 2009, ESA filed a proof of claim against Strawbridge's estate, secured by the co-op shares and lease, asserting that the amount due on the loan had ballooned to $562,027.28 as a result of nearly a decade in default.  *See* No. 09-17208-mg, Dkt. 78.  On March 22, 2010, ESA assigned its secured claim against the estate to appellee Khanamirian.  *See* JA-P at Ex. 6.

Upon his appointment, the Chapter 7 Trustee attempted to gain access to Strawbridge's apartment to assess its value as the estate's primary asset.  After several aborted and contentious attempts to access to the apartment, the Trustee and his retained evaluators were granted access in fall 2010 and fixed the apartment's value at approximately $450,000.  *See* JA-M at 4 ¶ 10.  Because the amount of the secured claims on the estate—by Khanamirian on the loan, and by East 74 on the maintenance fees the debtor had not paid—exceeded the assessed value of the estate's assets, the Trustee engaged the creditors in settlement discussions to resolve their claims.

Pursuant to those discussions, in June 2011, the Trustee, East 74, and Khanamirian entered into a stipulation whereby the Trustee transferred the co-op shares and lease to Khanamirian in exchange for the release of her claim and $35,000 to the estate (approximately the amount needed to satisfy additional unsecured claims against the estate).  *See* JA-H.  Under the stipulation, the co-op shares and lease as transferred to Khanamirian were still to be encumbered by the (then nearly $190,000) secured claim from East 74.  *Id.*  In essence, Khanamirian exchanged her claim against the estate for the shares and lease to Strawbridge's co-op, but also agreed to make East 74 whole and provide the estate with cash to satisfy its unsecured creditors.  Also pursuant to the stipulation, Khanamirian offered Strawbridge $25,000

[4]

to voluntarily vacate her apartment; however, in the event Strawbridge chose not to do so, Khanamirian was to turn the $25,000 over to the Trustee to cover the costs of eviction. *Id.*

On June 9, 2011, the Trustee moved the Bankruptcy Court to approve the stipulation. *Id.* Strawbridge was the sole objector. *Id.* On July 13, 2011, the Bankruptcy Court held a hearing on the Trustee's motion and set out its reasons for granting the motion to approve the stipulation. *See* JA-T. On July 15, 2011, the Order formally approving the stipulation was issued. *See* JA-R. It is from that Order that Strawbridge now appeals.

On July 27, 2011, Strawbridge timely filed a notice of appeal of the Order. On September 27, 2011, Strawbridge, acting *pro se*, filed a large submission, styled a "Statement of Issues," but did not file a document specifically identified as an appellant's brief. As a result, appellees never submitted a brief in opposition, and this appeal remained unperfected for nearly three months. In December 2011, the appellees, having seen no movement of Strawbridge's appeal in this Court, sought an order in the Bankruptcy Court permitting them to evict Strawbridge from her apartment. Strawbridge thereupon filed an Order to Show Cause in this Court, seeking to restrain the appellees from evicting her pending resolution of this appeal. In her submission accompanying the Order to Show Cause, Strawbridge requested that her "Statement of Issues" be treated as her appellant's brief. Dkt. 10 at 25.

On January 10, 2012, the Court called the parties to a conference to put this matter back on track. By Order on that date, the Court directed that Strawbridge's "Statement of Issues" be re-docketed as an appellant's brief, that appellees submit briefs in opposition by January 31, 2012, and that Strawbridge file a reply by February 14, 2012. Dkt. 8. The Court also directed the appellees to consult with Strawbridge to compile and submit a Joint Appendix of documents comprising the record on appeal. *Id.* On January 31, 2012, the appellees submitted an

opposition brief, and on February 14, 2012, Strawbridge filed a reply. In the interim, the Bankruptcy Court granted the appellees' motion for an order compelling Strawbridge's eviction, but stayed execution of that order pending resolution of this appeal.

In support of her appeal, Strawbridge makes three principal arguments why the Bankruptcy Court erred in approving the stipulation.[2] First, she argues that Khanamirian could not have a valid claim against the bankruptcy estate because (a) Indymac bank sold the loan more than a year before it was put into conservatorship by the FDIC, and therefore the FDIC could not have assigned it to Kondaur; thus, she asserts, any document purporting to transfer the loan from the FDIC to Kondaur, and so on down the line to Khanamirian, must be forged; (b) even if Indymac owned the loan when it was put into conservatorship by the FDIC, the FDIC did not have authority to assign her loan to Kondaur; and (c) Khanamirian's claim based on the loan is time-barred.

Second, she argues that the Trustee has badly undervalued her apartment, and therefore the Trustee's assumption underlying the stipulation—that the secured claims were worth more than the value of the apartment—is incorrect, and the stipulation should not have been approved.

Third, she argues that because the apartment was undervalued, there is equity remaining in the apartment, and an order approving the seizure of the apartment to satisfy her creditors would be unduly harsh. Accordingly, she argues, the use of such a procedure to enforce her financial obligations should not be permitted pursuant to N.Y. C.P.L.R. 5240.

---

[2] Strawbridge's submission contains more than three point headings, but some points are duplicative, and, based on the substance and asserted facts underlying the arguments in those headings, the Court has winnowed down her arguments to the three discussed herein. In so doing, the Court has been mindful that it must interpret *pro se* submissions to raise "the strongest arguments they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006).

In opposition, the three appellees filed separate briefs, but, collectively, made these arguments in support of affirmance of the Bankruptcy Court's approval of the stipulation: (1) the Bankruptcy Court did not abuse its discretion in approving the stipulation as a valid exercise of the Trustee's business judgment; (2) Strawbridge's appeal should be dismissed under the doctrine of unclean hands because she allegedly altered documents in an attempt to show that her apartment was undervalued by the Trustee; and (3) the chain of title for the loan is unbroken and Khanamirian is, in fact, the successor-in-interest to Indymac. By Order dated February 21, 2012, the Court requested supplemental briefing from the appellees addressing the issue of whether some or all of the payments due on the note are time-barred. *See* Dkt. 23. On February 29, 2012, the appellees submitted supplemental briefs.[3]

For the reasons that follow, the Court holds that the Bankruptcy Court did not abuse its discretion in approving the stipulation. Because this ruling does not require the Court to find that Khanamirian is in fact the holder of the loan, the Court does not reach that point. Nor does the Court reach appellees' alternative argument based on unclean hands.

**II.   Discussion**

   **A.   Standard of Review**

Under Rule 8013 of the Federal Rules of Bankruptcy Procedure, this Court "may affirm, modify, or reverse [the] bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. Rule 8013 further provides that the bankruptcy judge's "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous . . . ." *Id.* To set aside a finding of fact under Rule 8013, a reviewing court must be left with a "definite and firm conviction" that an error has been

---

[3] The Court will refer to the supplemental brief by the party name, *e.g.*, "Trustee's Supp. Br."

[7]

made.  *Ortega v. Dunn*, 333 F.3d 102, 106–07 (2d Cir. 2003); *Best Payphones, Inc. v. Manhattan Telecomms. Corp. (In re Best Payphones, Inc.)*, 432 B.R. 46, 53 (S.D.N.Y. 2010).  By contrast, a district court reviews the legal conclusions of the bankruptcy court *de novo*.  *Pleasant v. TLC Liquidation Trust (In re Tender Loving Care Health Servs.)*, 562 F.3d 158, 161 (2d Cir. 2009); *Official Comm. of Unsecure Creditors of Applied Theory Corp. v. Halifax Fund, L.P. (In re Applied Theory Corp.)*, 493 F.3d 82, 85 (2d Cir. 2007).  The Court reviews "mixed questions of law and fact either *de novo* or under the clearly erroneous standard depending on whether the question is predominantly legal or factual." *Italian Colors Rest. v. Am. Express Travel Related Servs. Co. (In re Am. Express Merchants' Litig.)*, 554 F.3d 300, 316 n.11 (2d Cir. 2009), *vacated on other grounds by Am. Express Co. v. Italian Colors Rest.*, 130 S. Ct. 2401 (2010); *see also United States v. Selioutsky*, 409 F.3d 114, 119 (2d Cir. 2005); *Bay Harbour Mgmt., L.C. v. Lehman Bros. Holdings Inc. (In re Lehman Bros. Holdings, Inc.)*, 415 B.R. 77, 83 (S.D.N.Y. 2009).

The determination being appealed here is the Bankruptcy Court's approval of a stipulation pursuant to Bankruptcy Rule 9019.  The Second Circuit has determined that such a determination is a mixed question of law and fact which is predominantly factual in nature; the Court therefore reviews "for abuse of discretion the reasonableness of [the Bankruptcy Court's] application of the Rule in approving the Settlement." *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 461 n.13 (2d Cir. 2007); *see also Krys v. Official Comm. of Unsecured Creditors (In re Refco Inc.)*, 505 F.3d 109, 116 (2d Cir. 2007), *Police & Fire Ret. Sys. of the City v. Ambac Fin. Group, Inc. (In re Ambac Fin. Group, Inc.)*, No. 11-cv-7529, 2011 U.S. Dist. LEXIS 149610, at *7 (S.D.N.Y. Dec. 28, 2011).  "The Bankruptcy Court will have abused its discretion if no reasonable [person] could agree with

the decision to approve [the] settlement." *In re Ambac Fin. Group, Inc.*, 2011 U.S. Dist. LEXIS 149610, at *7 (citing *Kenton Cnty. Bondholders Comm. v. Delta Air Lines, Inc. (In re Delta Air Lines, Inc.)*, 374 B.R. 516, 522 (S.D.N.Y. 2007)).

### B.     Applicable Legal Standard – Rule 9019

Strawbridge's appeal is limited to the order appealed from—the July 15, 2011 Order approving the stipulation between the Trustee, East 74, and Khanamirian. Federal Rule of Bankruptcy Procedure 9019 provides, in pertinent part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." To be approved, a settlement must be fair and equitable; courts in this circuit have developed standards by which the fairness of a settlement—and therefore of an order approving a settlement—must be judged. That framework, in turn, was based on the decision in *TMT Trailer Ferry Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968). In *In re Iridium Operating LLC*, the Second Circuit, applying *TMT Trailer Ferry*, identified the seven interrelated factors a court must weigh in evaluating a settlement under Rule 9019:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment; (3) the paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement; (4) whether other parties in interest support the settlement; (5) the competency and experience of counsel supporting, and [t]he experience and knowledge of the bankruptcy court judge reviewing, the settlement; (6) the nature and breadth of releases to be obtained by officers and directors; and (7) the extent to which the settlement is the product of arm's length bargaining.

*In re Iridium Operating LLC*, 478 F.3d at 462 (quoting *In re WorldCom, Inc.*, 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006) (internal quotation marks omitted)); *see also Guippone v. BH S&B Holdings, LLC*, No. 09-cv-1029, 2011 U.S. Dist. LEXIS 126026, at *12–13 (S.D.N.Y. Oct. 28,

2011).  In weighing these factors, a bankruptcy court need not decide the numerous questions of law and fact raised by the settlement, rather, it need only "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness."  *Guippone*, 2011 U.S. Dist. LEXIS 126026, at *14 (citing *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)) (internal quotation marks omitted); *see also Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982) ("The Supreme Court [in *TMT Trailer Ferry*] could not have intended that, in order to avoid a trial, the judge must in effect conduct one.").

### C. The Bankruptcy Court's Analysis

The Court has carefully reviewed the Bankruptcy Court's oral decision at the motion hearing and found no error meriting any alteration to the Order.  The Bankruptcy Court correctly identified the governing legal standard.  *See* JA-T 40:4–40:11 (discussing the *TMT Trailer Ferry* and *Iridium* decisions).  And the Court finds no abuse of discretion in the Bankruptcy Court's application of the *Iridium* factors to the facts at hand; on the contrary, its explanation of its reasons for granting the Trustee's motion is well-reasoned and persuasive.  *See* JA-T 39:11–42:25.  The Court addresses each of Ms. Strawbridge's arguments challenging that analysis in turn; none have merit.

#### 1. Strawbridge's claim that Khanamirian has no valid claim against the estate

Strawbridge argues that Khanamirian cannot have a valid claim against the estate because Khanamirian is not the holder of the loan, and therefore a key premise underlying the stipulation was incorrect. In support of this argument, she makes three factual claims.  First, she claims that Indymac sold the loan in 2006, and therefore the FDIC, which assumed control of Indymac in 2008, could not have assigned the loan to Kondaur, who in turn could not have assigned it to ESA, who in turn could not have assigned it to Khanamirian.  Second, Strawbridge asserts that,

even if Indymac did hold the loan at the time it was put into conservatorship by the FDIC, the FDIC did not have the authority or capability to assign her loan to Kondaur. Third, she claims that the right to collect on the note is time-barred under New York law. None of these claims is persuasive.

          a)    **Strawbridge's claim that the FDIC lacked authority to transfer her loan to Kondaur**

Because Strawbridge's second argument is quickly disposed of, the Court addresses it first. Simply put, there is no support for the assertion that the FDIC lacked the authority or capability, as conservator of Indymac, to manage, assign, market, sell, or otherwise dispose of Indymac's assets in the normal course of business.[4]

          b)    **Strawbridge's claim that Indymac sold the loan in 2006**

As for Strawbridge's first claim, that Khanamirian is not in fact the holder of the loan, this possibility was thoroughly examined, but ultimately discounted, by the Bankruptcy Court in the hearing on the motion to approve the stipulation. In an objection to the Trustee's motion, Strawbridge's counsel stated that she had reason to believe that Strawbridge's loan had been sold by Indymac in 2006, some two years before that institution was pressed into conservatorship by

---

[4] Additionally, though no party cites law on this point, it appears that, to the extent Indymac had the authority to sell or assign Strawbridge's loan—which, assuming Indymac still owned the loan in 2008, Strawbridge does not dispute—the FDIC as conservator would be imbued with similar power. *See* 12 U.S.C. § 1821(d)(2)(B):

> The Corporation may (subject to the provisions of [12 U.S.C. § 1831q]), as conservator or receiver--
>     (i) take over the assets of and operate the insured depository institution with all the powers of the members or shareholders, the directors, and the officers of the institution and conduct all business of the institution;
>     (ii) collect all obligations and money due the institution;
>     (iii) perform all functions of the institution in the name of the institution which are consistent with the appointment as conservator or receiver; and
>     (iv) preserve and conserve the assets and property of such institution.

the FDIC, and that therefore the FDIC never had title to pass on to Kondaur, and so on down the line to Khanamirian.  *See generally* JA-17.  Strawbridge's counsel relied on an e-mail, allegedly sent by an attorney for the FDIC, in which that attorney told Strawbridge's counsel that the loan "was part of a Non-Performing Asset sale in 2006 by IndyMac prior to the bank's failure."  JA-17 Ex. D.  The Bankruptcy Court did not credit this assertion for two reasons.

First, the Bankruptcy Court found that the e-mail was, at most, unsupported hearsay which did not trump documents showing that the FDIC did, in fact, assign Strawbridge's loan to Kondaur.  As Judge Glenn stated at the July 13, 2011 hearing:

> [T]he e-mail from [the FDIC lawyer] is not competent evidence.  It's fairly clearly rank hearsay.  There may be—and you've had since April [2011] and you've had—it's dated, what, April 11th, 2011, and you've had plenty of time to investigate what I would have thought would have been pretty important to you.  And the only—when I ask for evidence, you provide me with a hearsay e-mail from [the FDIC lawyer] that doesn't even indicate what his role was in any of these matters.  He's a lawyer at a law firm in New York.  You raise allegations about a potentially serious matter, whether Ms. Khanamirian owns the note and mortgage.  But throwing out an allegation is not sufficient to contest—it doesn't create a contested matter . . . .

JA-T 34:11–34:23.

Second, the Bankruptcy Court confirmed that the Trustee—whose ultimate responsibility it was to determine that the stipulation was in the best interests of the estate—had analyzed the relevant documents and was satisfied that Khanamirian's claim based on the loan was sufficiently meritorious as to warrant a settlement.  The Bankruptcy Court further noted that in one of Strawbridge's prior bankruptcy proceedings, in 2008, Indymac had been listed as one of her creditors without objection.  The following colloquy reflects the Bankruptcy Court's attentiveness to this issue:

> **The Court**:  [L]et me put this question to you . . . I want to be satisfied that in exercising his business judgment, that Mr. Messer has fairly evaluated whether Ms. Khanamirian owns the note—owns a valid note and mortgage such that the

trustee properly can decide in the exercise of his business judgment to enter into a settlement that will result in Ms. Khanamirian obtaining ownership and possession of this apartment subject to the claim of the building . . . .

JA-T 35:4–35:14.

> **Trustee's Counsel**:  Your Honor, we've had an opportunity to discuss this in the hallway a little bit and to examine the documents, and one of the questions that we asked [Strawbridge's counsel] was at what point was this alleged -- did IndyMac sell off its paper, including this note.  And [Strawbridge's counsel] had indicated it was 2006.  I think that, then, answers the inquiry for the trustee, despite the fact that all the originals are sitting with the Khanamirians and the note and the shares, and the reason I say that is in the prior bankruptcy, what you were shown before by [Khanamirian's counsel] was the order that was entered by Judge Peck.  And that order, which was dated January 28, 2008, approximately two years -- or give or take, a year and a half after the purported transfer references that it was IndyMac -- GMAC as servicer for IndyMac who got relief from stay.  I think it now becomes law of this case, since there was an order entered in that case that hasn't been challenged, and this is in addition to the volumes of documents that indicate that there were -- there are original allonges and that there's original certificates and original shares and original notes sitting with the party purporting to be the owner of the note.  I guess it's somewhat -- it would warrant further inquiry on our part if there was something in addition to that.  This is the party who it went to.  Or we saw in the chain of -- or we saw in a search, a UCC search that there was another party making claim.
>
> **The Court**:  By now, you would think, if somebody else claimed they owned the mortgage--
>
> **Trustee's Counsel**:  Since 2006, Judge, I would assume so.  I would assume somebody's not that wealthy that they can let five years roll by without having a mortgage perform.  But it would sort of defy logic, given all of the wealth of documents here that speak to the ownership by the Khanamirians, and I think at this point, the trustee is satisfied that the ownership does lie with the Khanamirians.  I understand there is an e-mail from a party who doesn't want to get involved.
>
> **The Court**: I don't know whether he wants to get involved or not.  It's a hearsay document.
>
> **Trustee's Counsel**:  But that doesn't raise [sic] to the level of a further inquiry by the trustee more than what, as I said, you have now an order that post-dates that alleged transfer by IndyMac in a proceeding before Judge Peck where, I assume if this was an issue, would have been raised at that time.  So Your Honor, in answer to your question in a very long-winded fashion, yes, we are satisfied [that Khanamirian owns the note].

JA-T 36:9–38:1.  Thus, after weighing the competing arguments of counsel, and taking notice of Judge Peck's ruling in Strawbridge's prior bankruptcy proceeding, the Bankruptcy Court reasonably concluded that, on the record as a whole, it could not credit Strawbridge's argument that Khanamirian did not own the loan so as to undermine the stipulation:

> So the Court has, again, as I said earlier, in determining whether to approve the settlement, the Court doesn't try the issues and render a decision on issues that would have to be tried and determined if the matter were litigated to final judgment.  So with respect to the only real issue that's been raised today, whether Ms. Khanamirian is the holder of a valid note and mortgage, since Ms. Khanamirian is a party to this settlement, while various allegations have been made, none supported by any evidence, that there are issues regarding the validity of the note and mortgage that Ms. Khanamirian holds whether someone else claims an interest in it or not, I'm also mindful of the order that Judge Peck entered lifting the stay in the prior case that he had before him in which he determined that IndyMac was a creditor, that's at a date two years after the time [Strawbridge's counsel] has raised an issue as to whether IndyMac had already sold this loan. So I think I will -- I will disregard the unsupported allegation that IndyMac had sold the loan that suggests that somebody else owns it, no one else having shown up in the last five years claiming that they are the holder of this note and mortgage.

JA-T 41:20–42:14.  This Court finds no abuse of discretion in this conclusion, and therefore rejects Strawbridge's challenge to the July 15, 2011 Order, to the extent based on the claim that Khanamirian does not hold the loan.

         c)       **Strawbridge's claim that the right to collect on the loan is time-barred under New York law**

Strawbridge's reply papers raise the new argument that Khanamirian has no valid claim against the estate because the right to collect on the note is time-barred under N.Y. C.P.L.R. 213.[5]  Under New York law, "[t]he statute of limitations in a mortgage foreclosure action begins to run from the due date for each unpaid installment, or from the time the mortgagee is entitled to

---

[5] Although the Court ordinarily does not consider arguments raised for the first time in a reply brief, in light of the fact that Strawbridge is a *pro se* litigant, the Court will address it.

demand full payment, or from the date the mortgage debt has been accelerated." *Plaia v. Safonte*, 45 A.D.3d 747, 748 (2d Dep't 2007) (citing *Zinker v Makler*, 298 A.D.2d 516, 517 (2d Dep't 2002); *Notarnicola v Lafayette Farms*, 288 A.D.2d 198, 199 (2d Dep't 2001); *EMC Mtge. Corp. v Patella*, 279 A.D.2d 604, 605 (2d Dep't 2001); *Loiacono v Goldberg*, 240 A.D.2d 476, 477 (2d Dep't 1997)). N.Y. C.P.L.R. 204, however, provides that "where the commencement of an action has been stayed by a court or by statutory prohibition, the duration of the stay is not a part of the time within which the action must be commenced."

In this case, as a brief rehearsal of Strawbridge's litigation history reflects, her argument that Khanamirian's claim on the note is time-barred is not meritorious. In late 2001 or early 2002, after Strawbridge failed to make required payments, Indymac accelerated the loan, triggering the statute of limitations, and a foreclosure auction was scheduled for November 14, 2002. Trustee's Supp. Br. 2. On November 13, 2002, Strawbridge's first bankruptcy was initiated, triggering an automatic stay under 11 U.S.C. § 362. *Id.* On May 29, 2003, that stay was lifted. *Id.* Another auction was scheduled for July 31, 2003, and Strawbridge filed thereafter a lawsuit against Indymac in New York state court, alleging predatory lending practices. The state court stayed the foreclosure auction, with that stay being lifted on or about the time Strawbridge's case was dismissed on October 12, 2006. *Id.*

On December 19, 2006, Strawbridge filed her second petition under the Bankruptcy Code, and an automatic stay was issued pursuant to § 362. *Id.* On January 28, 2008, that stay was lifted. *Id.* On February 8, 2008, Strawbridge filed yet another case against Indymac in New York state court, and, on March 24, 2008, the court stayed the third scheduled auction of

[15]

Strawbridge's shares.[6]  *Id.*  On December 8, 2009, Strawbridge filed the instant petition under the Bankruptcy Code, generating yet another automatic stay under § 362.

Thus, even though it has been approximately 11 years since Strawbridge has made a payment on the note, the six-year statute of limitations in N.Y. C.P.L.R. 213 has been tolled for all but approximately two years of that period.  *See Mercury Capital Corp. v. Shepherds Beach, Inc.*, 281 A.D.2d 604, 605 (2d Dep't 2001) (holding that statute of limitations on mortgage note was tolled under C.P.L.R. 204 during federal bankruptcy proceeding); *Weinstein-Korn-Miller*, New York Civil Practice: CPLR 204.2.  Khanamirian's claim for payment on the note is thus timely.

### 2.     Strawbridge's argument that the Trustee undervalued her apartment

Second, Strawbridge argues that the Trustee has undervalued her apartment, and therefore the Trustee's assumption underlying the stipulation—that the secured claims were worth more than the value of the apartment—is incorrect.  The Court finds this argument unpersuasive as well.

In undertaking his duties to administer and liquidate Strawbridge's assets, the Trustee retained professional assessors who fixed the value of Strawbridge's apartment at approximately $450,000.  *See* JA-M 4 ¶ 10.  At the hearing on the stipulation, the Bankruptcy Court overruled Strawbridge's objection to the Trustee's valuation, primarily on the basis that the only documents supporting Strawbridge's opposing valuation claim of $1 million to $1.6 million were listing agreements with real estate brokers which Strawbridge had altered so as to inflate the proposed listing price.  *See* JA-T 7:7–9:10, 14:24–17:13, 41:6–41:19.  Indeed, Strawbridge's counsel expressly withdrew any reliance on those inflated estimates at the hearing on the

---

[6] That case was ultimately removed to this Court after Indymac was placed into receivership by the FDIC.  It remains stayed on the Court's docket.

Trustee's motion to approve the stipulation. See JA-T 17:12–13. Under such circumstances, the Court finds no abuse of discretion in the Bankruptcy Court's factual conclusion that the Trustee's valuation was correct, and that the assessed value of the apartment was exceeded by the amount of the secured claims against Strawbridge's estate.

On appeal, Strawbridge offers a new valuation to her apartment, claiming that it is worth approximately $2 million. See Strawbridge Br. 5, 13, 28. There is, however, no support for that assertion aside from Strawbridge's own statements. There is, thus, no reliable evidence (let alone record evidence) that the Trustee's valuation was erroneous.

### 3. Strawbridge's argument that, due to the equity in her apartment, an order allowing the seizure of the apartment is unduly harsh

Finally, Strawbridge argues that because the apartment was undervalued, there is equity in the apartment, and an order approving the seizure of the apartment to satisfy her creditors would be unduly harsh. Accordingly, she argues, using such a procedure to enforce her financial obligations should not be permitted pursuant to N.Y. C.P.L.R. 5240. This argument is unpersuasive for three independent reasons.

First, as noted, the Court has rejected the premise of the argument—that Strawbridge's apartment is in fact worth more than the value of the claims on her estate.

Second, it is not the Order appealed from that deprived Strawbridge of control over her apartment. That occurred when the case was converted to a Chapter 7 proceeding and the Trustee appointed to administer her property, including the co-op shares and lease. Notably, Strawbridge did not appeal the conversion of her Chapter 11 petition to a Chapter 7 proceeding, and any opportunity to do so has long since passed. The Order appealed from merely reflects the Trustee's legitimate choice to administer the estate in a fashion which requires conveyance of the co-op shares and lease to a third-party.

[17]

Third, and relatedly, the Court's review suggests that C.P.L.R. 5240, on which Strawbridge relies, is not applicable here. It provides:

> The court may at any time, on its own initiative or the motion of any interested person, and upon such notice as it may require, make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure. Section 3104 is applicable to procedures under this article.

Under New York state case law, C.P.L.R. 5240 has been discussed only in the context of enforcement against a *judgment* debtor—*i.e.*, C.P.L.R. 5240 is relevant only where a creditor has already obtained a money judgment against a debtor. *See, e.g.*, *Rondack Constr. Servs., Inc. v. Kaatsbaan Intl. Dance Ctr., Inc.*, 13 N.Y.3d 580, 584–85 (N.Y. 2009); *Tarrytown & N. Tarrytown S&L Ass'n v. DePasquale*, 249 A.D.2d 462 (2d Dep't 1998); *Capital One, N.A. v. 174 St., LLC*, No. 115534/08, 2011 NY Slip Op 33084U (Sup. Ct. N.Y. Cnty. Nov. 29, 2011); *Cadlerock Joint Venture, L.P. v Bersson*, 934 N.Y.S.2d 32 (Sup. Ct. N.Y. Cnty. 2011); *Samsun Logix Corp. v Bank of China*, 929 N.Y.S.2d 202 (Sup. Ct. N.Y. Cnty. 2011); *Gottesman Co. v. Keystone Enters.*, No. 603352/03, 2011 NY Slip Op 31195U (Sup. Ct. N.Y. Cnty. Apr. 21, 2011). The claims at issue in this case have not, it appears, yet been reduced to a money judgment—Strawbridge's repeated filing of petitions for relief under the Bankruptcy Code has prevented the process ultimately leading to such a judgment from running its course. Moreover, the stipulation resolving Khanamirian's claim (and, in effect, East 74's) was solicited by the Trustee and approved by the Bankruptcy Court for the express purpose of short-circuiting litigation and dispensing with the time and expense necessary to arrive at a final judgment on these claims. Therefore, Strawbridge's resort to C.P.L.R. 5240 does not assist her in this case.

In sum, none of Strawbridge's arguments on appeal persuades the Court that the Bankruptcy Court's abused its discretion in issuing the Order granting the Trustee's motion to

approve the stipulation.  Accordingly, after considering Strawbridge's arguments and carefully reviewing the record, the Court finds no error warranting an alteration to the Order.

#          #          #

The Court recognizes the heavy impact that the stipulation will ultimately have on Ms. Strawbridge:  Her debt problems will, in all likelihood, have caused her to lose her home. However, this Court, like the Bankruptcy Court, is duty-bound to apply the law, neutrally and unswayed by sympathy; the appellees are entitled to no less.  After careful review, the Court concludes that the Bankruptcy Court did not abuse its discretion in granting, and that it properly granted, the Trustee's motion to approve the stipulation.  Strawbridge's appeal is, therefore, denied.

## CONCLUSION

For the foregoing reasons, Strawbridge's appeal is denied, and the Order is affirmed in all respects.  The Clerk of Court is directed to terminate any pending applications and to close this case.

The appellees are directed to immediately serve a copy of this decision upon Strawbridge by overnight mail.  Additionally, because the Bankruptcy Court has predicated a stay of execution of the eviction order upon the resolution of this appeal, the appellees are directed to notify the Bankruptcy Court forthwith of this Court's decision so that the Bankruptcy Court may take appropriate action to either lift the stay or further stay execution of the eviction order pending an appeal, if any, of this decision to the United States Court of Appeals for the Second Circuit.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: March 6, 2012
       New York, New York